Sanford J. BERGER, Lulu Wills, Philip Rees, Gerrit Joosten, Plaintiffs,

v.

Samuel R. PIERCE, Jr., etc., Harold T. Duryee, etc. Defendants.

No. 1:88CV1147.

United States District Court, N.D. Ohio, E.D.

Aug. 30, 1991.

**866**

Sanford J. Berger, Berger & Gertel, Cleveland, Ohio, for plaintiffs.

Michael Anne Johnson, Asst. U.S. Atty., Cleveland, Ohio, for defendants.

## MEMORANDUM OF OPINION AND FINDINGS OF FACT AND CONCLUSIONS OF LAW

KRENZLER, District Judge.

This is a case in which the plaintiffs are claiming that they are entitled to be compensated under their federal flood insurance policies. Their claims were rejected and they have brought this action.

Because homes near large bodies of water, such as lakes and rivers, have a difficult time getting or cannot get private insurance, the United States Congress made a policy decision and decided to provide flood insurance principally for homes that were susceptible to being flooded. These policies are for damage caused by floods as defined by the Congress. Damage caused by normal erosion is not covered.

In 42 U.S.C. § 4001, the Congress made its findings and declaration of purpose. The Congress noted that from time to time flood disasters have created personal hardships and economic distress which have required unforeseen relief measures and have placed an increasing burden on the nation's resources. The Congress stated that the national policy was to provide a reasonable method of sharing the risk of flood losses and that is through a program of flood insurance which can complement and encourage preventive and protective measures.

The Congress also found that many factors have made it uneconomical for the private insurance industry alone to make flood insurance available to those in need of such protection on reasonable terms and conditions.

Included in its findings were those contained in 42 U.S.C. § 4001(g) where the Congress found that the damage and loss that may result from the erosion and undermining of shorelines by waves or currents in lakes and other bodies of water exceeding anticipated cyclical levels is related in cause and similar in effect to that which results directly from storms, deluges, overflowing waters and other forms of flooding.

The Congress stated that its purpose is to make available flood insurance protection against damage and loss resulting from the erosion and undermining of shorelines by waves or currents in lakes and other bodies of water exceeding anticipated cyclical levels.

This latter provision was adopted as an amendment effective December 31, 1973.

The Congress made it clear that policies would be issued for flood damage and not normal damage by erosion. It is noted that there is a difference between floods that may occur in rivers where the water rises suddenly and causes damage to homes abutting or near the river and erosion type damages to homes located on high hills overlooking lakes, such as Lake Erie. Usually, the damage to homes overlooking lakes are the result of long-term erosion which finally causes a collapse of the foundation and, ultimately, the house itself because the sub-soil was gradually eroded.

This latter type of erosion occurs over a long period of time and it may result from a combination of gradual erosion when the anticipated cyclical level is not exceeded and when the waves and currents are in excess of the anticipated cyclical level.

Title 42, Section 4121 of the United States Code contains the various definitions. The term "flood" may include inundations from rising waters or from the overflow of streams, rivers, or other bodies of water or from tidal surges, abnormally high tidal water, tidal waves, tsunamis, hurricanes or other severe storm or deluge.

42 U.S.C. § 4121(a)(1). The term "flood" also includes mudslides. 42 U.S.C. § 4121(b).

In addition, in 1973, the Congress added another definition of flood as contained in 42 U.S.C. § 4121(c).

The term "flood" shall also include the collapse or subsidence of land along the shore of a lake or other body of water as a result of erosion or undermining caused by waves or currents of water exceeding anticipated cyclical levels, and all of the provisions of this chapter shall apply with respect to such collapse or subsidence.

When the Congress amended the flood insurance laws to add this provision, Senate Report No. 93–583, page 3229, noted that this amendment to the National Flood Insurance Act of 1968 added a new meaning to the term "flood."

It noted that such erosion and coverage is appropriate only to the extent that it is flood related; that is, suddenly caused by an unusually high water level in a natural body of water, accompanied by a severe storm, or by an unanticipated force of nature, such as a flash flood or an abnormal tidal surge or by some similarly unusual and unforeseeable event. The amendment is not intended to provide coverage for the losses incurred when properties built too close to shorelines are eventually damaged as a result of normal and continuous wearing away of land by ordinary wave action. If the loss is gradual and takes place over the course of years, it would not be covered.

It can thus be seen that the Congress faced a dilemma. It made a policy decision that normal erosion would not be covered by flood insurance policies. It is recognized, however, that there could be a combination of normal erosion coupled with abnormal erosion which could be characterized as a flood for flood insurance purposes.

It seems to this Court that this concept is very difficult, if not impossible, to administer. Obviously, there were complaints from people living on lake fronts and that the erosion was causing damage. The political pressure must have been great upon the Congress and rather than provide for insurance for damage caused by normal erosion, it apparently made a compromise to be consistent with the concept of flood insurance and created the new term of "abnormal erosion" and the definition set forth in 42 U.S.C. § 4121(c). The Congress said, in effect, that if there was erosion caused by waves or currents in excess of the anticipated cyclical level it is considered a flood.

We should take a look at the language of the statute, 42 U.S.C. § 4121(c), which is stated as follows:

(c) The term "flood" shall also include the collapse or subsidence of land along the shore of a lake or other body of water as a result of erosion or undermining caused by waves or currents of water exceeding anticipated cyclical levels, and all of the provisions of this chapter shall apply with respect to such collapse or subsidence in the same manner and to the same extent as with respect to floods described in paragraph (1), subject to and in accordance with such regulations, modifying the provisions of this chapter (including the provisions relating to land management and use) to the extent necessary to insure that they can be effectively so applied, as the Secretary may prescribe to achieve (with respect to such collapse or subsidence) the purposes of this chapter and the objectives of this program.

We will now take a look at the regulations contained in 44 C.F.R. Chapter 1, Subchapter B, Insurance and Hazard Mitigation, Part 59, Section 59.1, which states that a flood is (a) a general and temporary condition of partial or complete inundation of normally dry areas from (1) the overflow of inland or tidal waters, (2) the unusual and rapid accumulation or runoff of surface waters from any source, (3) mudslides; (b) the collapse or subsidence of land along the shore of a lake or other body of water as a result of erosion or undermining caused by waves or currents of water exceeding anticipated cyclical levels or suddenly caused by an unusually high water

level in a natural body of water, accompanied by a severe storm, or by an unanticipated force of nature, such as flash flood or an abnormal tidal surge, or by some similarly unusual and unforeseeable event which results in flooding.

The regulations further define "flood related erosion" as the collapse or subsidence of land along the shore of a lake or other body of water as a result of undermining caused by waves or currents of water exceeding anticipated cyclical levels or suddenly caused by an unusually high water level in a natural body of water accompanied by a severe storm or by an unanticipated force of nature, such as a flash flood or an abnormal tidal surge or by some similarly unusual and unforeseeable event which results in the flooding.

"Flood-related erosion area" or "flood-related erosion prone area" means a land area adjoining the shore of a lake or other body of water which due to the composition of the shoreline or bank and high water levels or wind-driven currents is likely to suffer flood-related erosion damage.

We will now take a look at the language of the policy.

POLICY LANGUAGE

"Flood": Wherever in this policy the term "flood" occurs, it shall be held to mean:

A. A general and temporary condition of partial or complete inundation of normally dry land areas from:

1. The overflow of inland or tidal waters.

2. The unusual and rapid accumulation or runoff of surface waters from any source.

3. Mudslides (i.e., mudflows) which are proximately caused by flooding as defined in subparagraph A–2 above and are akin to a river of liquid and flowing mud on the surfaces of normally dry land areas, including your premises, as when earth is carried by a current of water and deposited along the path of the current.

B. The collapse or subsidence of land along the shore of a lake or other body of water as a result of erosion or undermining caused by waves or currents of water exceeding the cyclical levels which result in flooding as defined in A–1 above.

It seems to this Court that while the Congress was trying to take care of the problem of flood-related erosion rather than normal erosion, the language chosen leaves a lot to be desired and almost defies implementation. The Committee Report is clearer than the statute.

What is meant by erosion or undermining caused by waves or currents of water exceeding anticipated cyclical levels has not been expressly defined, either in the statute or in the regulations. However, the Congress made it clear that it did not want to cover normal erosion with flood insurance but only abnormal erosion caused by floods. The definition relates to erosion or undermining caused by waves or currents of water exceeding anticipated cyclical levels.

■■■ In this case, we are dealing with alleged flooding in Lake Erie and not a river that rises and causes flooding in a typically recognized manner, such as occurs in the springtime on the Ohio river. There is a distinction between this type of flooding and the type of flooding referred to in this case.

The water level in lakes rises and falls because of a lot of different factors. A lake, such as Lake Erie, is like a bowl. Water is added from various sources such as rain. Rainwater is added to the lake by it falling directly on it and also runoff water from the adjacent land areas. The water level changes from time to time at various areas of the lake based on tides, currents, wave action, etc. The lake level may also be reduced by evaporation or water taken away for residential, industrial or other uses.

Lands abutting lakes are eroded. When the lakes are still or tranquil and there is no wave action, there is little or no erosion. However, when there is wave action then we get some erosion. Naturally, the higher the level of the lake and the higher the

waves and the more agitation that occurs, the greater the erosion.

The Army Corps of Engineers anticipates lake levels over periods of time and actually tracks the actual lake levels on a regular basis. Further, the wider a beach is or a shore is, the less erosion there will be. Conversely, the narrower the beach, more erosion will occur. Therefore, when a person happens to have a house on a hill abutting a lake with a large or wide beach, there will be little or no erosion of the hill. However, if a person has a house on a hill, say 20 feet high, and the beach is only, say, 20 feet wide, there will be more erosion of the hill than the prior example.

Over time, because of the anticipated cyclical levels of the lake, sometimes in excess or sometimes less than the anticipated cyclical levels, there is erosion. When waves or currents are in excess of the anticipated cyclical levels and there is erosion, it is defined as a flood. That is the only event that Congress intended for the flood insurance to cover.

So, when there is erosion by a flood it means that the waves and currents are in excess of the anticipated cyclical levels. It is only the damage that is caused by a flood that is covered by flood insurance. Damages caused by normal erosion are not considered a flood and thus not compensable.

The real problem in this case is the lack of a clear-cut definition of flooding caused by abnormal erosion. It could be argued that over periods of time there is both normal erosion and abnormal erosion caused by flooding and that, finally, there is damage. The government takes the position that it is the final blow or there must be a flood as defined to cause the damage in order to be compensable under the policy. The fact that there may have been a substantial period of time during which there were waves in excess of the anticipated cyclical level which caused erosion is of no account as far the government is concerned.

It is the final blow that counts or, stated another way, the straw that broke the camel's back. Thus, if there was normal erosion over a long period of time and finally there was a flood as defined in the statute and the regulations and this caused the damage, there would be coverage. On the other hand, if there was normal erosion coupled with floods as defined in the statute and the regulations and up to that point there was no damage, and then finally there was additional normal erosion and then the damage, there would not be coverage.

The plaintiffs are contending that the cause of the damage was a flood as defined and the government takes the position that there was not damage caused by a flood. The evidence presented by the plaintiffs does not clearly establish that in 1987 there was collapse or subsidence of land along the shore of Lake Erie as a result of undermining caused by waves or currents of water exceeding anticipated cyclical levels.

If we are limited to looking at what happened in 1987 alone, we cannot say that the plaintiffs met their burden of proof by showing that the flooding as defined in the statute and the regulations caused the erosion and the damage and that there was abnormal erosion.

It seems to this Court that a most persuasive argument could be made that if, over a period of time, abnormal erosion as defined in 42 U.S.C. § 4121(c), coupled with the normal erosion resulted in damage to the property, and the abnormal erosion was a substantial contributing factor, this was a proximate cause of the damage and thus the flood insurance policy would cover the damage.

The problem with this view is that it could be argued that it compensates for normal erosion and not covered by the statute. The Committee Report clearly states that the damage must be caused by an unusual high water level in a natural body of water accompanied by a severe storm or an unanticipated force of nature. It clearly stated that the amendment is not intended to provide coverage for the losses incurred when properties built too close to shorelines are eventually damaged as a result of normal and continuous wearing away of land by ordinary wave action. If the loss is

gradual and takes place over the course of years, it would not be covered.

If persons having homes on banks of lakes where the banks are subject to erosion want insurance from the government for this erosion, their case should be taken to the Congress for additional amendments. No matter how sympathetic a court may be to a party, the court is obligated to make its decisions based on the laws passed by the Congress of the United States and not based on feelings or sympathy for a party.

Congress chose to limit the coverage for flood insurance to a time when the actual damage was caused by a flood as defined in 42 U.S.C. § 4121(c), that is an unusual event. The fact that over a period of time there may have been both abnormal erosion caused by flooding as defined in 42 U.S.C. § 4121(c) and normal erosion, and it was the normal erosion in the year of the damage that was the final act causing damage, does not provide coverage.

Congress made it clear that it did not want to provide coverage for normal erosion so it defined the time when the damage occurred to provide liability and not to a long period of time. Congress was not required to provide flood insurance. It did so on a very limited basis when houses are built on banks or hills overlooking and near lakes. It made it clear that it did not want to provide flood insurance for normal erosion so it decided that there was a difference between normal erosion and abnormal erosion as defined in 42 U.S.C. § 4121(c). It must be the abnormal erosion that is the final blow or event at the time the damage occurs. Congress decided to limit coverage to the event or the action that took place immediately prior to the actual damage. Congress did not take an overall long-range view of what was going on in regard to normal and abnormal erosion, but limited itself to the action at the time of the damage.

This Court is in sympathy with persons having homes on banks abutting lakes where the banks are subject to erosion, both normal and abnormal. However, the Congress chose to limit the flood insurance to what it defines as abnormal erosion. The Congress made it clear that it would not provide insurance for normal erosion.

Perhaps the Congress should adopt a national policy of providing for erosion insurance for those persons who live in areas abutting lakes. It seems that it is only a question of time until erosion would undermine these houses unless some preventive measures are taken, but that is a function of the legislative branch of government and not the courts. The courts can only apply the law as enacted by the Congress. There was some evidence presented that claims of persons similarly situated to the plaintiffs and in the same neighborhood were approved for flood insurance payments. This Court, in this litigation, is only concerned with whether these plaintiffs were entitled to flood insurance payments under the facts in this case. It appears that some of these other claims may have been wrongly allowed. This would indeed be unfortunate and an injustice if they were paid for damage resulting from normal erosion. Unfortunately, in our system of government, different government employees may make different decisions. Not all decisions in regard to claims against the government are uniform, but that is not the issue before this Court.

The plaintiffs have the burden of proof in this case. Inasmuch as the plaintiffs did not prove by a preponderance of the evidence that the collapse or subsidence of land along the shore of Lake Erie was the result of undermining caused by waves or currents of water exceeding anticipated cyclical levels at the time of the alleged damage, this Court shall grant judgment for the defendants and against the plaintiffs.